## THIRZA DITZLER v. STATE OF OHIO.

**1. INDICTMENT FOR SHOULD CONTAIN WORDS OF STATUTE OR THEIR EQUIVALENT.**

The words, "tends to degrade and disgrace such person," as used in sec. 6830, Rev. Stat. of Ohio, is a part of the description of the offense, and should be pleaded, or words that are equivalent.

**2. ACTS OF ACCOMPLICE NOT COMPETENT UNLESS CONSPIRACY PROVEN.**

To convict a person charged with crime by the act and declaration of another person jointly indicted with such person, a conspiracy must be proven beyond a reasonable doubt.

ERROR to the Court of Common Pleas of Logan county.

SENEY, J.

The plaintiff in error was indicted, convicted and sentenced to the penitentiary upon an indictment charging:

"That Jerome B. Rose, Kate Rose and Thirza Ditzler, on the 27th of June, 1889, in said county of Logan and state of Ohio, unlawfully, wrongfully and maliciously did falsely accuse one Lula Boals then and there being of certain immoral conduct, to-wit: that of criminal intimacy with one Perry Howard then and there being, and of the purpose and intent of her, the said Lula Boals, to leave her husband and elope with the said Perry Howard, and the said Jerome B. Rose, Kate Rose and Thirza Ditzler did then and there threaten her, the said Lula Boals, to cause her; the said Lula Boals, to be arrested and punished for such criminal intimacy and determination to elope as aforesaid, and to publish and make public the same, and thereby expose and subject her, the said Lula Boals, to the contempt and ridicule of society, with the intent then and there and by means of such false and unlawful accusation and with menace, unlawfully, willfully and knowingly to extort certain money, to-wit, the sum of one hundred dollars from her, the said Lula Boals."

To this indictment the defendant Thirza Ditzler filed a motion to quash, averring as the reasons therefor:

That it is alleged in the said indictment, in one and the same count thereof, First—That said defendant did unlawfully, willfully and maliciously accuse one Lula Boals of certain immoral conduct, to-wit, that of criminal intimacy, etc., with one Perry Howard, with intent to extort money, to-wit, the sum of one hundred dollars from her, the said Lula Boals; Second—That said defendant did then and there threaten to publish and make public said criminal intimacy

and thereby expose and subject her, the said Lula Boals, to the contempt and ridicule of society, with the intent to extort said money from her, the said Lula Boals. The pleading in said indictment is double. Third—Said indictment is in many other respects informal and defective.

This motion was overruled and an exception taken.

The first question presented to the court, is, did the court err in overruling the motion.

The indictment is drawn under sec. 6830, Rev. Stat., which reads:

"Whoever, either verbally, or by letter or writing, or written or printed communication, sent or delivered by him, demands of any person, with menace, any chattel, money, or valuable security, or accuses, or knowingly sends or delivers any letter or writing, or any written or printed communication, with or without a name, or with any letter, mark, or designation, accusing or threatening to accuse, any person of a crime, punishable by law, or of any immoral conduct which, if true, would tend to degrade and disgrace such person, or to expose or publish any of his infirmities or failings, or in any way to subject him to the ridicule or contempt of society, or to do an injury to the person or property of any person, with intent to extort or gain from such person any chattel, money, or valuable security, or any pecuniary advantage whatsoever, or with intent to compel the person threatened to do any act against his will, with the intent aforesaid, shall be imprisoned in the penitentiary not more than five years nor less than one year, and may be fined not more than one thousand dollars."

As Johnson, Judge, says in the case of Elliott v. State, 36 O. S., 321:

"In many respects it lacks that clearness of meaning and accuracy of expression that should characterize legislation, especially when, as in this case, it creates new crimes of highest grade, it is well calculated to give rise, as it already has done, to many original and perplexing questions."

It is evident that this indictment is an attempt to charge two offenses under this section, the first part of the indictment, one offense, viz., unlawfully, willfully and maliciously did falsely accuse one Lula Boals then and there being of certain immoral conduct, to-wit: "that of criminal intimacy with one Perry Howard, then and there being, and of the purposes and intent of her, the said Lula Boals, to leave her husband and elope with the said Perry Howard."

The second part of the indictment, another offense, viz.: "that the said Jerome B. Rose, Kate Rose and Thirza Ditzler then and there threatened her, the said Lula Boals, to cause her, the said Lula Boals, to be arrested and punished for such criminal intimacy and determination to elope, as aforesaid, and to publish and make public the same, and thereby expose and subject her, the said Lula Boals, to the contempt and ridicule of society."

It appears to be conceded by counsel, and it is the view the learned judge in the court below took of it, that the second part of the indictment charged no offense, for the reason that the threat was not in writing; this is but following what Johnson, Judge, says in the case of Elliott v. State, 36, O. S., 318, 324, wherein he says:

"If this was a charge of 'threatening to accuse,' the words of the statute would seem to require that it should be in writing."

Why this construction should be given to it, we are unable to see, sufficient it is to say that the supreme court has said so, and it is our duty to follow it.

So this part of the indictment is mere surplusage, as it charges no offense.

It is urged in argument that the first part of the indictment is defective for want of the words as used in the statute, viz., "would tend to degrade and disgrace such person;" in this case "person" is Lula Boals.

What should an indictment contain?

Warren, in his work on Criminal Law, on page 36, says:

"It is a general rule, that all indictments and complaints upon statutes, especially the most penal, must state all the circumstances which constitute the

definition of the offense in the act, so as to bring the defendant precisely with-
in it.

"It is in general, necessary, not only to set forth on the record all the
circumstances which make up the statutable definition of the offense, but also
to pursue the precise and technical language in which they are expressed in the
statute.

"But there are some cases in which this verbal strictness has been relaxed,
and a different interpretation pursued, where, indeed, the words used are, in
effect, equivalent to those contained in the act.

"An indictment or complaint must describe the offense with such certainty
as to apprise the defendant what he is to answer, that he may shape his defense,
and plead the judgment in bar.

"It is a rule of criminal law, based upon sound principles, that every indict-
ment should contain a complete description of the offense charged. That it
should set forth the facts constituting the crime, so that the accused may have
notice of what he is to meet, of the act done, which it behooves him to controvert,
and so that the court, applying the law to the facts charged against him, may
see that a crime has been committed. This is necessary, also, in order that the
court may know, upon conviction, what crime has been committed and what
penalties incurred. The highest degree of certainty is not required."

The words of the statute are not charged—or their equivalent charged—
to be so they must be of such import as "tends to degrade and disgrace Lula
Boals."

The first part of the charge is "criminal intimacy;" what is that? what does
it mean? is it the same as "illicit intercourse," "sexual intercourse," "criminal
conversation," if it is of that nature—it is charging a crime, but the indictment
does not charge a crime. The indictment charges immoral conduct. Of what
did the defendant accuse, Lula Boals, by charging criminal intimacy, the facts
are not stated, this is uncertain and ambiguous, in doubt. The next words are
"and of the purpose and intent of her, the said Lula Boals, to leave her husband
and elope with the said Perry Howard" would that tend to degrade and dis-
grace her,—it certainly would if she was a married lady, and her husband was
living, but the indictment does not charge that she is married, or that she has
a husband. Can the court say, this is immoral conduct that tends to degrade
and disgrace? It would certainly be, if certain facts were pleaded, which are not.
It depends upon facts that are not pleaded, and hence could not be proven. If
she was a single woman, and Perry Howard was a proper person, would it be
immoral conduct that the court could say, as a matter of law, it tended to de-
grade and disgrace. You might accuse John Smith of running a saloon, this
would not be such immoral conduct (in law) as tends to disgrace and degrade
him, but if John Smith was a minister of the gospel, and you would so charge
in an indictment and accuse him of running a saloon, this would tend to degrade
and disgrace.

I made this illustration for the purpose of showing how certain facts, as a
matter of law, would tend to degrade and disgrace, depending upon whom the
person is.

So we hold that "the words tend to degrade and disgrace such person" is a
part of the description of the offense, and should be pleaded, or words that are
equivalent. In this indictment—in the opinion of the court—neither was done;
hence the indictment is bad, and the motion to quash should have been sus-
tained.

The next question presented is, was it error to permit the acts and declara-
tions of the co-defendant J. B. Rose to be given in evidence against the de-
fendant, when such acts were done and such declarations made in the absence
of the defendant. When they were introduced, the jury were specially instructed
by the court that they were not competent, and should receive no consideration

unless J. B. Rose and the defendant were so connected in the transaction as to make the act or declaration of one the act and declaration of the other—this fully and completely protected the right of the defendant in introducing the acts and declarations of Rose in advance of the proof of a conspiracy.

When the testimony was all in, we think the declaration and acts of Rose were clearly competent as against the defendant; there was evidence introduced that tended to show a most complete and foul conspiracy between J. B. Rose, Kate Rose and the defendant to extort money from the prosecuting witness, by means of an accusation, without the shadow of a foundation and against a lady of high respectability. She is to be commended, not censured for the trap she led them into; our only regret is that the indictment does not charge the accusation of immoral conduct, proven viz.: That she was a married lady, living with her husband, that Perry Howard was an entire stranger to her, no relation to her, and had been seen going in and out of her house late at night, had taken buggy rides with her, that she being married was going to elope with him, etc., etc. These are the accusations the proof tends to show she made, and not what is charged in the indictment, in all which the evidence tends to prove the defendant was a co-conspirator.

We find no error in admitting the acts and declarations of Rose. The next question is, did the court err in its charge and refusal to charge?

The legal effect of the charge and refusal to charge, excepted to, is "that the court charge that it is not necessary to find a conspiracy existed between Rose and the defendant beyond a reasonable doubt." This, we think, was error. It was held in the case of Adams v. State, 31 O. S., 462, that:

"On the trial, under an indictment for burglary, every essential element in the charge must be proved beyond a reasonable doubt; and it is misleading to instruct the jury, 'that it is not necessary that every fact requisite to constitute burglary should be proved beyond a reasonable doubt, but the jury must look to all the facts and circumstances and be able to say that the defendant is guilty beyond a reasonable doubt.'"

From this it will be seen that every element of the charge must be proven beyond a reasonable doubt; conspiracy was an element against the defendant. In other words, before the acts and declarations of Rose became the acts and declarations of the defendant, they must be made so by the same degree of proof that her own acts and declarations require, they are her acts and declarations in law if she is a conspirator—they are not if she is not—they become her acts by reason of a conspiracy alone, before they become her acts it takes the element of conspiracy in connection with the act, this being an essential element to make it her act, if it is not proven beyond a reasonable doubt, the charge in the indictment against her is not proven beyond a reasonable doubt. It may be claimed the charge in the indictment is not conspiracy; that is true in one sense, and in another it is not. They are jointly indicted, and as held by the supreme court, in the case of Goins v. State, 46 O. S., 457, 463. "This is true where the act of conspiring is itself the crime charged, but where some other act is the real offense, and the conspiracy is a common purpose leading to the commission of the main criminal act or conspiracy, need not be alleged in express terms, and if any allegation in respect thereof is at all necessary—the charge in the indictment that it was jointly done is sufficient for that purpose."

The charge of the court given by the lower court in the case of Breese v. State, 12 O. S., 153, was approved by the supreme court, and we have no doubt, although not expressly decided in that case, that it is the law. It reads as follows:

"The charge, which is copied into the statement of the case, and which, on account of its length, I do not propose to repeat here, was, substantially, that if the jury should find, beyond a reasonable doubt, from the testimony, that the defendant had agreed with others to commit the burglary, on the night on

. which it was done, and that as a part of said agreement, and to facilitate the breaking and entry, and lessen the chance of detection, it was agreed that the defendant should on that night, procure or decoy the owner, Whetstone, away from the store, in which he usually slept, to a party, about a mile distant, and detain him there, while the other confederates were to break and enter said store, and remove the goods, and that both parties did, in fact, perform, their respective parts of said agreement, that then the defendant was constructively present at the breaking and entry by his confederates, and might be connected as principal therein, if all the other material allegations were proved beyond a reasonable doubt. We are free to say that this charge, if there was evidence tending to prove it, is unexceptionable."

For the reason given upon the motion to quash—the motion in arrest of judgment should have been sustained.

Entertaining these views the judgment and sentence of the common pleas will be reversed and the defendant discharged.

James Kernan, for plaintiff in error.

W. S. Plum, pros. att'y, assisted by Hon. Duncan Dow, for defendant in error.